UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE LEE WILLIAMS,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. CV 16-2433 JC<br><br>MEMORANDUM OPINION |

## I.    SUMMARY

On April 8, 2016, Eddie Lee Williams ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; April 13, 2016 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 22, 2012, plaintiff filed an application for Supplemental Security Income alleging disability beginning on May 1, 2011, due to manic depressive disorder, paranoid schizophrenia, degenerative disc disease, high blood pressure, and problems with his hearing, left knee, right shoulder and arm.  (Administrative Record ("AR") 34, 180, 198).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 1, 2014.  (AR 20-77).

On August 27, 2014, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 34-45).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  degenerative lumbar disease, left knee osteoarthritis, obesity, and depressive disorder (AR 36-37); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 37-38); (3) plaintiff retained the residual functional capacity to perform less than the full range of light work (20 C.F.R. § 416.967(b)) with additional limitations[1] (AR 38); (4) plaintiff had no past relevant work (AR 44); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically cleaner, and advertising distributor (AR 44-45); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 39).

On February 9, 2016, the Appeals Council denied plaintiff's application for review.  (AR 1).

---

[1]The ALJ determined that plaintiff:  (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand/walk six hours in an eight hour workday; (iii) could sit six hours in an eight hour workday; (iv) could engage in occasional postural activities; and (v) could only perform simple, repetitive tasks with no more than occasional contact with others.  (AR 38).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

3

1  experience, allow the claimant to adjust to other work that

2  exists in significant numbers in the national economy?  If so,

3  the claimant is not disabled.  If not, the claimant is disabled.

4  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

5  Cir. 2006) (citations omitted); see also 20 C.F.R. § 416.920(a)(4) (explaining five-

6  step sequential evaluation process).

7    The claimant has the burden of proof at steps one through four, and the

8  Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d

9  676, 679 (9th Cir. 2005) (citation omitted).

10    **B.** **Standard of Review**

11    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

12  benefits only if it is not supported by substantial evidence or if it is based on legal

13  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

14  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

15  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

16  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

17  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

18  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

19  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether

20  substantial evidence supports a finding, a court must "'consider the record as a

21  whole, weighing both evidence that supports and evidence that detracts from the

22  [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th

23  Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

24    An ALJ's decision to deny benefits must be upheld if the evidence could

25  reasonably support either affirming or reversing the decision.  Robbins, 466 F.3d

26  at 882 (citing Flaten, 44 F.3d at 1457).  A court may not affirm an ALJ's decision,

27  however, "simply by isolating a 'specific quantum of supporting evidence.'"  Id. at

28  882 (citation omitted).

1   Even when an ALJ's decision contains error, it must be affirmed if the error
2   was harmless.  <u>Treichler v. Commissioner of Social Security Administration</u>, 775
3   F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was
4   inconsequential to the ultimate nondisability determination; or (2) despite the
5   error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was
6   drafted with less than ideal clarity.  <u>Id.</u> (citation and quotation marks omitted).
7   The claimant has the burden to establish that an ALJ's error was not harmless.
8   <u>See</u> <u>Molina</u>, 674 F.3d at 1111 (citing <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409
9   (2009)).
10  **IV.   DISCUSSION**
11       **A.   The ALJ Properly Considered the Evidence Provided by**
12            **Plaintiff's Treating Nurse Practitioner**
13       Plaintiff contends that the ALJ failed properly to consider a March 26, 2014
14  Mental Impairment Questionnaire ("March 26 Questionnaire") from Mr. Joseph
15  Weigel, plaintiff's treating nurse practitioner, which essentially stated that plaintiff
16  had impairments and related limitations that would prevent plaintiff from
17  performing even sedentary work (collectively "Mr. Weigel's Opinions").
18  (Plaintiff's Motion at 9-14) (citing AR 638-43).  A remand or reversal on this
19  basis is not warranted.
20            **1.   Pertinent Law**
21       In Social Security cases, the amount of weight given to medical opinions
22  generally varies depending on the type of medical professional who provided the
23  opinions, namely "treating physicians," "examining physicians," and
24  "nonexamining physicians" (*e.g.*, "State agency medical or psychological
25  consultant[s]").  20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a);
26  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation
27  marks omitted).  A treating physician's opinion is generally given the most weight,
28  and may be "controlling" if it is "well-supported by medically acceptable clinical

5

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 416.927(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted).  In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion.  Garrison, 759 F.3d at 1012 (citation omitted).

Social Security regulations also distinguish between "*acceptable* medical sources" (*e.g.*, licensed physicians, licensed or certified psychologists) and "*other* medical sources" (*e.g.*, nurse-practitioners, physicians' assistants, chiropractors, therapists).  See 20 C.F.R. § 416.913(d); Social Security Ruling ("SSR") 06-03P at *1-*2, *5 (emphasis added); Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted).  Only "acceptable medical sources" may (1) provide evidence to establish a medically determinable impairment; (2) provide "medical opinions";[2] or (3) be a treating physician whose medical opinions may be entitled to controlling weight.  See 20 C.F.R. §§ 404.1513(a), 416.913(a), 416.927(a)(2), (d); SSR 06-03p, at *2.  Although acceptable medical sources are generally given more weight, evidence from other medical sources must still be considered, and may be used generally to show the severity of an impairment and how it affects a claimant's ability to work.  See 20 C.F.R. § 416.913(d); Ghanim, 763 F.3d at 1161 (citation omitted); SSR 06-03p at *3, *5.

An ALJ's decision must explain the weight given to statements from "other" medical sources, and may reject such statements only by "giving reasons germane to each witness for doing so."  Ghanim, 763 F.3d at 1161 (citations and internal quotation marks omitted); SSR 06-03p at *6.

---

[2]"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2); see SSR 06-03p at *2.

## 2.    Analysis

Preliminarily, to the extent plaintiff suggests that Mr. Weigel's Opinions should be evaluated in the same manner as those provided by a treating physician (Plaintiff's Motion at 9-10), plaintiff is incorrect.  Contrary to plaintiff's suggestion otherwise, a nurse practitioner does not automatically express medical opinions "on behalf of" a supervising treating physician.  The Ninth Circuit has previously held that the opinions of an "other" medical source, such as a nurse practitioner, may be considered those of an "acceptable medical source" to the extent the nurse practitioner "was working closely with, and under the supervision of [a treating physician]."  Taylor v. Commissioner of Social Security Administration, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996), superseded by regulation as noted in Boyd v. Colvin, 524 Fed. Appx. 334, 336 (9th Cir. 2013), and as explained in Hudson v. Astrue, 2012 WL 5328786, at *4 (E.D. Wash. Oct. 29, 2012)).  Such holding, however, relied on Gomez which itself cited a regulation subsection that was deleted by amendment in 2000 (i.e., that "nurse practitioners [are] acceptable medical sources when part of an interdisciplinary team").  See Farnacio v. Astrue, 2012 WL 4045216, *6 (E.D. Wash. Sept. 12, 2012) (citing 65 Fed. Reg. 34950, 34952 (June 1, 2000)); see also Molina, 674 F.3d at 1111 n.3 (noting "[Gomez] holding that a nurse practitioner could be an acceptable medical source, relied in part on . . .  regulatory section [which] has since been repealed," but finding it unnecessary to address "continued vitality" of Gomez under the particular facts of the case); Vega v. Colvin, 2015 WL 7769663, *13 (S.D. Cal. Nov. 12, 2015) ("[A]s numerous district courts in the Ninth Circuit have recognized, both before and after Taylor, the regulation relied on in Gomez regarding 'interdisciplinary teams' involving 'other sources' such as nurse practitioners and physician assistants has since been amended, and 'interdisciplinary teams' are no longer considered 'acceptable medical sources.'") (citing cases), report and

1  recommendation adopted, 2015 WL 7779266 (S.D. Cal. Dec. 2, 2015).  Under

2  current Social Security regulations, a nurse practitioner is expressly categorized as

3  an "other [medical] source."  See Dale v. Colvin, 823 F.3d 941, 944-45 (9th Cir.

4  2016) (citations omitted); Ghanim, 763 F.3d at 1161 (Nurse practitioners and

5  therapists are considered "other sources." (citation omitted); Farnacio, 2012 WL

6  4045216, at *6 (E.D. Wash. Sept. 12, 2012) (citing, in part, 20 C.F.R. §

7  416.913(d)(1)).  Nonetheless, even assuming a nurse practitioner could, in certain

8  circumstances, provide opinions as an "acceptable medical source," plaintiff

9  points to no evidence in the instant record that his is such a case (e.g., that Mr.

10  Weigel "was working closely with" and/or "in conjunction with" – and thus "was

11  acting as an agent of" – a particular physician).  Accordingly, here the ALJ was

12  only required to provide germane reasons for giving "little weight" to Mr.

13  Weigel's Opinions – which the ALJ, in fact, did.

14       First, the ALJ properly gave less weight to Mr. Weigel's "check-the-box"

15  responses in the March 26 Questionnaire to the extent the nurse practitioner's

16  statements were conclusory and were unsupported by and/or inconsistent with

17  treatment notes.  See, e.g., Molina, 674 F.3d at 1111-12 (ALJ had "germane

18  reasons for discounting [physician's assistant's] opinions . . . [which] consisted

19  primarily of a standardized, check-the-box form [] which []failed to provide

20  supporting reasoning or clinical findings. . . .").  For example, as the ALJ noted,

21  contrary to Mr. Weigel's Opinions that plaintiff suffered from disabling mental

22  limitations, Mr. Weigel's own treatment notes reflect that plaintiff's condition

23  progressively improved in late 2013 and into early 2014 (AR 607-13, 615-16, 665,

24  667-68, 675, 678, 680-86, 688-89), with significant increase in symptoms

25  primarily during periods when plaintiff failed to take his prescribed medication

26  (see AR 670 [2/26/14 treatment note stating "ran out of meds"], 673 [2/5/14 note

27  that plaintiff ran out of all medication for over a month], 676 [11/6/13 provided

28  plaintiff med. education], 677 [10/9/13 noting plaintiff had taken no medication

8

1  for a month], 679 [8/14/13 noting plaintiff's "questionable adherence" to

2  medication]).[3]

3      Second, the ALJ properly gave less weight to Mr. Weigel's Opinions due to

4  other conflicts with Mr. Weigel's own treatment notes for plaintiff or the medical

5  record as a whole.  See, e.g., Dale, 823 F.3d at 944 (conflicts between medical

6  opinion and earlier assessment germane reason for giving less weight to other

7  medical source) (citing Molina, 674 F.3d at 1111-12).  For example, although the

8  March 26 Questionnaire listed "poor memory, poor insight, poor judgment" as the

9  primary medical/clinical findings supporting Mr. Weigel's Opinions regarding

10  significant limitations in plaintiff's mental abilities (AR 641), Mr. Weigel's

11  treatment notes from the same date listed plaintiff's memory, insight, and

12  judgment as "fair" (AR 668).  Likewise, Mr. Weigel's treatment notes leading up

13  to the date of his statements routinely documented less serious findings on mental

14  status examination whenever plaintiff was taking his medication as prescribed.

15  (See, e.g., AR 611, 684 [3/20/13 treatment note that plaintiff's memory, insight,

16  and judgment was "improving"]; AR 610, 683 [4/18/13 treatment note that

17  plaintiff's memory was "intact," and his insight and judgment were "fair"]; AR

18

19  _____

20      [3]To the extent plaintiff contends that the medical evidence reflects more severe mental
    limitations which actually support Mr. Weigel's Opinions (Plaintiff's Motion at 11-12), the

21  Court will not second guess the ALJ's reasonable determination otherwise, even if such evidence
    could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation

22  omitted).  To the extent Mr. Weigel's Opinions are based on plaintiff's symptoms during periods
    when plaintiff failed to comply with his prescribed medication (see, e.g., AR 670, 673, 676-77,

23  679), such opinions do not support a disability finding.  See Roberts v. Shalala, 66 F.3d 179, 183
    (9th Cir. 1995) (A claimant who would otherwise be found disabled within the meaning of the

24  Social Security Act may be denied benefits if he fails to follow prescribed treatment without
    justifiable cause) (citing SSR 82-59 ("delineat[ing] the circumstances in which the Secretary can

25  deny benefits on the basis that the claimant has failed to follow prescribed treatment")), cert.
    denied, 517 U.S. 1122 (1996); see also Warre v. Commissioner of Social Security

26  Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled
27  effectively with medication are not disabling for the purpose of determining eligibility for SSI
28  benefits.") (citations omitted).

609, 682 [5/23/13 treatment note that plaintiff's memory was "intact," insight and judgment was "fair," and plaintiff was "doing well on current meds"]; AR 608, 681 [6/19/13 treatment note that plaintiff's memory and insight were "poor," but judgment was still "fair"]; AR 607, 680 [7/17/13 treatment note that plaintiff's memory and insight were "fair," and his judgment was "good," and that plaintiff was "more personable" with decreased "mood swings"]; AR 678 [9/11/13 treatment note that plaintiff's insight was "poor," but his memory and judgment were "fair"]; AR 675 [12/4/13 treatment record noting "fair" memory, insight, and judgment]; see also AR 677 [10/9/13 treatment record noting "fair" memory, insight, and judgment despite plaintiff's noncompliance with prescribed medication]).

As the ALJ noted, despite Mr. Weigel's opinions that plaintiff had, among other things, "marked" limitations in activities of daily living and social functioning, and "extreme" difficulties in maintaining concentration, persistence or pace" (AR 642), Mr. Weigel assigned plaintiff a Global Assessment of Functioning ("GAF") score of 54 – which reflects only "moderate" mental limitations. See Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) (GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers)").

As the ALJ also noted, Mr. Weigel stated that plaintiff "has had traumatic brain injuries which appear to have affected [plaintiff's] cognition [and] intelligence" (AR 641), but plaintiff points to no objective medical evidence in Mr. Weigel's treatment notes or the medical record as a whole that plaintiff suffered any injury specifically related to his brain. Plaintiff's Motion contains an incomplete sentence which states "head injury where it indicates that in the '1990's hit by car again [head injury].'" (Plaintiff's Motion at 12) (citing AR 692)

10

1 (alteration by plaintiff).  The document plaintiff cites, however, is an unsigned

2 "supplemental information request" which does not – as plaintiff's quotation

3 alteration appears to suggest – reflect that plaintiff suffered a head injury from any

4 car accident.[4]  (AR 692).  Plaintiff also points to a June 10, 2011 progress note in

5 which plaintiff was diagnosed, in part, with "[rule out] dementia secondary to a

6 head injury."  (Plaintiff's Motion at 12) (citing AR 289).  Nonetheless, the cited

7 medical record says nothing about "traumatic brain injury" at all.  (AR 289).  At

8 most the record documents "unclear history of closed head injury" apparently

9 based on plaintiff's own statement "that he suffered a closed head injury '15 years

10 ago,'" and concludes merely that "hospital records and medication only suggest

11 that [plaintiff] has a pain disorder and a history of syncope."  (AR 289).

12     Similarly, Mr. Weigel indicated that due to his mental impairments, plaintiff

13 had "one or two" episodes of decompensation within a 12 month period.  (AR

14 642).  Nonetheless, the ALJ noted (and plaintiff points to no evidence to the

15 contrary) that there is little evidence of decompensation in the record, particularly

16 after March 2013.  (AR 43).

17     Accordingly, a remand or reversal on this basis is not warranted.

18 **B.     The ALJ Properly Assessed Plaintiff's Mental Residual**

19 **Functional Capacity**

20     Plaintiff essentially asserts that the ALJ erroneously failed to include a

21 "moderate limitation in maintaining concentration, persistence, and pace" in the

22 residual functional capacity assessment for plaintiff as well as the hypothetical

23 question posed to the vocational expert at the hearing.  (Plaintiff's Motion at 14-

24 17).  A reversal or remand on this basis is not warranted.

25

26 ─────────────

27     [4]Plaintiff's addition of "head injury" to his quotation from the cited document appears to be based on a misinterpretation of the abbreviation "HTN" noted in the document, which actually

28 appears to be a reference to hypertension (an impairment diagnosed elsewhere in plaintiff's medical records), not a head injury.  (AR 692; see AR 698).

### 1.    Pertinent Facts

On January 15, 2013, Dr. Ana Maria Andia, a state agency consultative examining psychiatrist/neurologist, performed a Complete Psychiatric Evaluation ("CE") of plaintiff, which included a mental status examination.  (AR 311-18).  Dr. Andia diagnosed plaintiff with psychosis (not otherwise specified), depressive disorder (not otherwise specified), "rule out acute drug intoxication[,]" and "rule out malingering," and noted the following regarding mental status testing:

> The claimant states that he has depressive symptoms and psychotic symptoms.  He denies that he has abused or is abusing alcohol and drugs.  However, his speech was dysarthric and he was not able to answer most of the questions during mental status testing.  It was difficult to determine whether the claimant was pretending not to know the answers to the questions or whether he was unable to answer the questions because he was acutely intoxicated with substances.  He tried to ask my receptionist for pain medication after I finished the interview with him.  [¶]  If he is not abusing street drugs, he may be taking too much of his Norco.

(AR 317).  In the Functional Assessment section of her CE report, Dr. Andia opined, among other things, that plaintiff (1) "Is able to understand, remember and carry out simple one or two-step job instructions[]"; and (2) "Is moderately limited in his ability to maintain concentration and attention, persistence and pace due to auditory hallucinations and acute intoxication or overmedication."  (AR 317).

On January 28, 2013, Dr. Robert Scott, a nonexamining, state agency medical consultant ("MC") reviewed plaintiff's medical records and opined, in pertinent part, as follows:

> Mental:  51 year old alleging schizophrenia, but CE is at best inconclusive.  It would appear [plaintiff] was intoxicated, which he denied.  At any rate, func[ti]on is minimally adequate for most work, he is capable of

1    doing [simple repetitive tasks].  He was found to be exag[g]erating at the
2    physical exam as well, which is telling.

3   (AR 83).

4        In a January 29, 2013 "Psych MC Note" incorporated into a Psychiatric
5   Review Technique for plaintiff, Dr. Scott stated, in part, the following:

6           The claimant's impairment is not sufficiently documented by
7       the material in file. . . .  The current [medical evidence of record]
8       consists of psych and IM CE's both of which are hampered by
9       impression that the claimant may be exaggerating his condition.  The
10      psych CE includes a Rule/Out Malingering impression, and is unable
11      to determine whether much of the observed findings are the result of
12      acute intoxication and/or over-medication effects.

13          Disposition:  The [medical evidence of record] does not
14      definitively document a severe mental impairment.  It is not
15      sufficiently clear to determine a level of [mental residual functional
16      capacity].  Further development would not be practical, as the
17      likelihood is low that the claimant would appear at a new examination
18      with a more reliable presentation.  No definitive severe mental
19      impairment has been firmly documented and the case will be rated as
20      such.

21   (AR 83, 84).

22       In an August 1, 2013 Psychiatric Review Technique, Dr. Junko
23   McWilliams, a nonexamining state agency psychologist, opined under "'B'
24   Criteria" that plaintiff had "[Moderate] Difficulties in Maintaining Concentration,
25   Persistence or Pace."  (AR 104).  In a Mental Residual Functional Capacity
26   Assessment of the same date, Dr. McWilliams opined, among other things, that
27   (1) plaintiff's ability to maintain attention and concentration for extended periods,
28   and ability to carry out detailed instructions were "moderately limited";

(2) plaintiff "[could] understand and remember simple instructions" and was "not significantly limited" in his abilities to understand, remember, and carry out very short and simple instructions; and (3) plaintiff's limitations "[did] not preclude him from performing the basic mental demands of competitive work on a [regular] basis." (AR 107-08).

### 2.    Pertinent Law

Residual functional capacity ("RFC") represents "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). When assessing RFC, an ALJ must evaluate "on a function-by-function basis" how particular impairments affect a claimant's abilities to perform basic physical, mental, or other work-related functions. SSR 96-8P at *1 (citing, in part, 20 C.F.R. § 416.945(b)-(d)). An ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of a claimant's subjective symptoms (*i.e.*, pain), that may reasonably be attributed to a medically determinable impairment. Robbins, 466 F.3d at 883 (citations omitted); see 20 C.F.R. § 416.945(a)(1). In addition, an ALJ must account for limitations caused by all of a claimant's medically determinable impairments, even those that are "not severe." SSR 96-8P at *5 (internal quotation marks omitted).

### 3.    Analysis

Here, the ALJ's assessment of plaintiff's mental residual functional capacity is supported by substantial evidence and free of material error.

First, substantial evidence supports the ALJ's determination that plaintiff has the mental residual functional capacity to perform simple, repetitive tasks. (AR 38). The ALJ gave "great weight" to Dr. Andia who, among other things, opined that plaintiff was able to "understand, remember and carry out simple one or two-step job instructions" despite moderate limitations in plaintiff's "ability to maintain concentration and attention, persistence and pace." (AR 42, 317). Dr. Andia's opinions were supported by the examining psychiatrist's independent

mental status examination of plaintiff (AR 314-16), and thus constituted substantial evidence supporting the ALJ's decision.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ also gave "great weight" to Dr. Scott, who opined that plaintiff was at least "capable of doing [simple repetitive tasks]," and Dr. McWilliams, who opined that plaintiff was generally able to perform "basic mental demands of competitive work," and could understand, remember, and carry out very short and simple instructions despite multiple moderate limitations in mental functioning, including limitations in maintaining attention and concentration.  (AR 42, 83, 107-08).  The opinions of Drs. Scott and McWilliams also constituted substantial evidence supporting the ALJ's residual functional capacity assessment since they were supported by the other medical evidence in the record the ALJ discussed, as well as Dr. Andia's opinions and underlying independent examination.  See Tonapetyan, 242 F.3d at 1149 (opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record).

Second, the ALJ did not err, as plaintiff suggests (Plaintiff's Motion at 14) (citing AR 37, 41), because her RFC assessment did not expressly include "moderate difficulties with concentration, persistence, or pace" – mental limitations the ALJ identified at steps two and three, and "fully discussed" later in the administrative decision (AR 37-38, 41-42).  As the ALJ noted, the broad categories of mental limitations used at steps two and three (i.e., "paragraph B criteria") are not necessarily transferred, verbatim, into the residual functional capacity assessment used at step five.  See, e.g., Phillips v. Colvin, 61 F. Supp. 3d 925, 939-40 (N.D. Cal. 2014) ("Moderate limitations [noted at step three of ALJ's analysis] do not have to be exactly mirrored in the RFC determination.") (citation

1 omitted); see generally Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007)

2 ("The step two and step five determinations require different levels of severity of

3 limitations such that the satisfaction of the requirements at step two does not

4 automatically lead to the conclusion that the claimant has satisfied the

5 requirements at step five."); SSR 96-8p at *4 ("The adjudicator must remember

6 that the limitations identified in the "paragraph B" and "paragraph C" criteria are

7 not an RFC assessment but are used to rate the severity of mental impairment(s) at

8 steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment

9 used at steps 4 and 5 of the sequential evaluation process requires a more detailed

10 assessment by itemizing various functions contained in the broad categories found

11 in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing

12 of Impairments, and summarized on the [Psychiatric Review Technique Form].");

13 Bordeaux v. Commissioner of Social Security, 2013 WL 4773577, *12-*13 (D.

14 Or. Sept. 4, 2013) (explaining difference between RFC assessment and B criteria

15 used in "special technique" for evaluating mental impairments at steps two and

16 three).  Hence, "[a]s relevant here, a moderate difficulty in concentration,

17 persistence, or pace [identified at steps two and three] does not automatically

18 translate to a RFC finding with these limitations."  Phillips, 61 F. Supp. 3d at 940

19 (citations omitted).  Instead, when assessing RFC, an ALJ must "translate" the

20 broad categories of mental *limitations* identified at steps two and three into the

21 detailed and "concrete" functional restrictions documented in the medical

22 evidence which reflect the *most* the claimant can do despite such mental

23 limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008);

24 Phillips, 61 F. Supp. 3d at 940 ("The relevant inquiry is whether the medical

25 evidence supports a particular RFC finding."); cf. Rounds v. Commissioner of

26 Social Security Administration, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is

27 responsible for translating and incorporating clinical findings into a succinct

28 RFC.") (citation omitted).

Here, the ALJ adequately accounted for plaintiff's moderate difficulties in concentration, persistence, and pace reflected in the medical evidence discussed above by assessing plaintiff with the mental RFC, in part, to perform "simple, repetitive tasks." Cf., e.g., Sabin v. Astrue, 337 Fed. Appx. 617, 621 (9th Cir. 2009) ("The ALJ determined the end result of [claimant's] moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks on a consistent basis.") (citation omitted); Murray v. Colvin, 2014 WL 1396408, *4 (N.D. Cal. Apr. 10, 2014) ("Accordingly, the ALJ did not err in determining Plaintiff's mental RFC. Consistent with the medical evidence in the record, the ALJ properly translated Plaintiff's moderate limitations with respect to concentration, persistence or pace into a limitation to one-to-two step instructions.") (internal quotation marks and citation omitted); see generally Stubbs-Danielson, 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). To the extent plaintiff argues that the medical evidence actually required the ALJ's RFC assessment to expressly include "a moderate limitation in maintaining concentration, persistence, and pace" (Plaintiff's Motion at 15-16), this Court will not second guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted). The unpublished decisions cited by plaintiff (Plaintiff's Motion at 15-16) do not persuade the Court that the medical evidence in this particular case required the ALJ to reach a different result.

Finally, even if the ALJ's RFC assessment failed properly to account for B criteria limitations in concentration, persistence or pace, plaintiff has not shown that any such error was not harmless. For example, substantial medical evidence reflects that despite his multiple mental limitations plaintiff, at a minimum,

retained the ability to "understand, remember, and carry out simple one or two-step job instructions."  (AR 107-08, 317).  At the hearing, the vocational expert identified representative occupations which require no more than Level One reasoning (AR 45, 73, 74) (citing Dictionary of Occupational Titles ("DOT") § 323.687-014 [Cleaner, Housekeeping], 230.687-010 [Advertising-Material Distributor]) – and thus do not exceed such a mental RFC.  See, e.g., Skeens v. Astrue, 903 F. Supp. 2d 1200, 1208-11 (W.D. Wa. 2012) (jobs involving only one- or two-step instructions correspond to DOT Reasoning Level One) (citing cases).

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   December 29, 2016

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE